# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                 **Case No. 09-CR-217**

**ERIC MEINEL**
        **Defendant.**

## SENTENCING MEMORANDUM

Based on his participation in a mortgage fraud scheme, the government charged defendant Eric Meinel by information with a violation of 18 U.S.C. § 1343. Defendant waived indictment by grand jury and pleaded guilty to the charge pursuant to an agreement with the government, and I set the case for sentencing. In imposing sentence, I first calculated the advisory guideline range, then determined the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 552 U.S. 38, 49-50 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for the sentence imposed.

## I. GUIDELINES

The parties agreed that defendant's crime carried a base offense level of 7, U.S.S.G. § 2B1.1(a)(1), and that he was subject to a 10 level enhancement based on the amount of loss it caused, § 2B1.1(b)(1)(F). The parties further agreed that defendant qualified for a 3 level reduction for acceptance of responsibility under § 3E1.1, for a final offense level of 14. Coupled with his criminal history category of I, level 16 produced an imprisonment range of 15-21 months.

## II.  SECTION 3553(a)

A.  **Sentencing Factors**

Section 3553(a) directs a sentencing court to consider:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the advisory guideline range;

(5)   any pertinent policy statements issued by the Sentencing Commission;

(6)   the need to avoid unwarranted sentence disparities; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant.  18 U.S.C. § 3553(a)(2).  In making this determination, the district court may not presume that the guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009); Rita v. United States, 551 U.S. 338, 351 2465 (2007), or place "any thumb on the scale" favoring a guideline sentence, United

States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. See Gall, 552 U.S. at 49-50.

**B.    Analysis**

**1.    The Offense**

Defendant and his business partner, Bradley Hollister, owned a real estate holding company called Accolade Enterprises, which bought, rented, renovated and sold real properties. Defendant and Hollister (whom the government charged separately) played a part in a large mortgage fraud scheme devised and executed by a mortgage broker named James Lytle. The scheme involved the sale of properties, at prices desired by the sellers, to straw buyers whose loan application information Lytle fabricated. After the loans closed, the sellers paid Lytle kick-backs, which were not disclosed in the settlement documents. Lytle and his partner, Martin Valadez, were both prosecuted in this district and sentenced to 84 and 72 months' imprisonment, respectively.

Defendant participated in the scheme regarding a property located on North Lincoln in Lake Geneva, Wisconsin, which he owned individually. Defendant bought this property for $159,500, then sold it to a man named Alan Messier for $242,500 six months later. Messier was not the actual purchaser but rather a straw buyer who got cold feet and walked out after the paperwork was completed. Lytle and Valadez then recruited Thaddeus Symankiewicz, a man who had worked in Lytle's office, to pose as Messier at closing in exchange for a payment of $1500. After the closing, defendant issued two checks totaling almost $20,000 to Lytle and Valadez, neither disclosed on the settlement statement. He noted on the check to Lytle

3

"consulting fees" and on a check he made out to Valadez's wife, "landscaping Lincoln." No payments were made on the loan, which went into default. The lender obtained a foreclosure judgment, and the property ultimately sold for $175,000.

Lytle's scheme also involved the fraudulent sales of four properties defendant co-owned with Hollister as a partner in Accolade. Accolade sold the first, located on Center Street in Lake Geneva, in a fraudulent transaction to a man named Juan Barbosa. After the initial buyer fell through, Lytle and Valadez arranged for Barbosa, a relative of Valadez who did not speak English, to be the straw purchaser of this property, duping him into believing that he was signing paperwork to assist Valadez secure a loan. Barbosa later learned the truth and made efforts to pay the mortgage and sell the property, but he found it worth less than the loan amount.

Accolade purchased the second property, located on Highway H in Genoa City, Wisconsin, in 2003 and sold it about a year and a half later for a significant profit. The buyers in that sale were genuine, but they lacked the income or assets to qualify for a legitimate mortgage. Knowing they would have a hard time getting a loan, Hollister introduced them to Lytle to create the paperwork. The loan application falsely identified the buyer as a single woman employed at "Valadez Furniture," and the appraisal misstated the type and condition of the home. Hollister also helped Lytle alter a photo on the appraisal. On the date of closing, Accolade cut Lytle a check for $3000 for arranging the sale.

Accolade obtained the third property, located on Grant Street in Lake Geneva, in May 2004 and sold it ten months later for a profit. Lytle prepared a fraudulent loan application for the buyer in that sale, a nineteen year old employed by Hollister as a handyman for $8 an hour. Hollister enlisted this person rather than waiting for a real buyer, with the plan being for

4

Accolade to buy it back on a land purchase contract and make the mortgage payments with rental income. However, the plan fell apart when the rental income proved insufficient.

Accolade obtained the final property, located on Wisteria Road in Pell Lake, Wisconsin, in March 2004 and re-sold it in 2005 for a profit. Lytle falsified information on the loan application about the buyer, who was forced into the purchase by Hollister as a means of repaying another debt. Hollister also obtained a false appraisal on the property.

Although defendant played a limited role in the fraudulent sales of the four Accolade properties, the crime was nevertheless serious. As the government indicated, mortgage fraud causes financial losses to lenders, contributes to the decline of the market, and harms the neighborhoods containing foreclosed properties.

    **2.**    **The Defendant**

In stark contrast to the shabbiness of the crime, defendant's character and background were quite positive. At age thirty-two, he had no prior criminal record. Married for over eight years, defendant and his wife acted as foster parents. In 2007, they adopted a special needs child born addicted to opiates and cocaine. Defendant's wife attended school full-time in addition to working part-time, so defendant acted as the primary care-giver for their child.

Defendant graduated from high school, took some college courses, and compiled a solid work record in real estate. In addition to managing a few remaining properties, he helped in his brother's electrical business. He had no history of substance abuse.

I received numerous supportive letters from friends and family members attesting to defendant's positive character and generous nature. His wife also prepared a detailed letter, which addressed the financial and emotional hardships defendant faced while she served in the military in Iraq in 2004-2005, the period of time during which the fraud primarily occurred.

5

### 3. The Sentence

The guidelines recommended 15-21 months in prison. However, given the nature of defendant's specific conduct, the circumstances of his life at the time of the crime, his overall approach to the case, and his character and background, I found a sentence served in the community sufficient to satisfy the purposes of sentencing.

First, this scheme was devised and primarily executed by Lytle and Valadez, and as between defendant and Hollister, defendant clearly occupied an inferior role. Although he was also responsible for the four fraudulent Accolade sales, defendant knew less and participated less than Hollister, as is indicated in the offense conduct discussion above.

Second, defendant's involvement primarily occurred while his wife was overseas serving in the military, a time not only of emotional stress but also financial pressure. While not excusing his conduct, these difficult circumstances did suggest some mitigation. Defendant had taken steps to address his mental health issues, as discussed in the pre-sentence report. (PSR ¶¶ 85-86.)

Third, defendant separated himself from Lytle, Valadez and Hollister before the government began investigating the case in 2006. He provided a statement when first approached by the FBI, as well as follow-up statements. His cooperative approach continued with his agreement to plead guilty to an information. These circumstances suggested that he fully understood the wrongfulness of his conduct and was not likely to repeat it.

Fourth, defendant's lack of prior record, positive personal characteristics, and strong family and community support bolstered the conclusion that prison was not needed to protect the public and deter defendant from re-offending. The prospect of a felony conviction, community confinement and lengthy supervision sufficed to deter others tempted to involve

themselves in this type of conduct.

Finally, a sentence served in the community best satisfied the need to provide restitution to the victims, which I had to consider under § 3553(a)(7), and best met the needs of defendant's family, particularly his young child. This sentence varied from the guidelines, but modestly, and because it was supported by the particular facts of the case, discussed herein, it created no unwarranted disparity.

### III. CONCLUSION

I therefore placed defendant on probation for a period of five years with a condition of six months home confinement. I selected the maximum probationary term to ensure financial monitoring and payment of restitution. I further required him to make regular restitution payments and imposed various other special conditions designed to ensure financial monitoring and protection of the public, which are set forth in full in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of January, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge